Filed 2/11/21  P. v. Mendez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B299684 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA004460) |
| v. | |
| GABRIEL MENDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Reversed and remanded with directions.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 1990 Gabriel Mendez pleaded no contest to second degree murder pursuant to a negotiated plea agreement and was sentenced to an indeterminate state prison term of 15 years to life. In 2019 Mendez petitioned to vacate his murder conviction under Penal Code section 1170.95[1] on the basis he was convicted under the natural and probable consequences doctrine and could not now be found guilty of murder in light of changes in the law. The superior court summarily denied Mendez's petition without first appointing counsel, finding the facts at trial showed Mendez had been convicted as a direct aider and abettor with the intent to kill and therefore he was ineligible for relief.

On appeal Mendez contends he made a prima facie showing of entitlement to relief based on his averments he did not have the intent to kill, was not aware the shooter had a gun, and was prosecuted under the natural and probable consequences doctrine. It is undisputed Mendez was not the actual killer, and nothing in his record of conviction establishes as a matter of law he had the intent to kill. We reverse the superior court's postjudgment order and remand with directions for the superior court to appoint counsel for Mendez, to issue an order to show cause, and to hold a hearing to determine whether to vacate Mendez's murder conviction.

---

[1]     All statutory references are to the Penal Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.  *The Killing*

We described the facts presented at trial in our nonpublished opinion in *People v. Valles* (Aug. 24, 1993, B058344) (*Valles*):[2]

"Sometime after midnight on May 12, 1990, two carloads of youths pulled into the parking lot of Discount Liquor in Pomona. The youths shouted slurs and 12th Street gang slogans and made gang signs with their hands. The victim, Jessie Jimenez, and a female companion had just completed a purchase inside the store. [Jimenez] left the store but immediately ran back inside when the youths threw beer cans at him and started chasing him.

"Appellant Mendez and co-defendants Ramon Magana and Richard Ortega belonged to the 12th Street gang. Appellant [Ricardo] Valles and co-defendants Alberto Valles and Victor Caudillo belonged to the Pomona Sur gang. [Jimenez's] family members were associated with the Pomona Michoacan Rifa, a rival gang to both the 12th Street and Pomona Sur gangs.

"The youths, including appellant Mendez, followed [Jimenez] inside the store and started beating and kicking him.[3]

---

[2]  Mendez was only present for a portion of the trial testimony because he entered a plea to second degree murder on the fourth day of trial. Therefore, at most only a portion of the trial testimony is part of Mendez's record of conviction. However, we discuss the facts adduced at trial because Mendez relies on those facts instead of citing to the preliminary hearing testimony.

[3]  Although we concluded in *Valles* that Mendez was part of the group beating and kicking Jimenez, Mendez in his opening brief cites to trial testimony in which a witness to the shooting

[Jimenez] sought refuge behind the cashier's counter.  The youths grabbed merchandise off the shelves and threw beer cans, six packs of beer and other items at [Jimenez] as he [lay] on the floor curled in a fetal position.  One of the youths yelled 'Twelve' in Spanish and another made a gang sign." (*Valles, supra*, B058344.)

"Appellant Valles pulled out a gun, leaned over the counter and prepared to fire the gun at [Jimenez]." (*Valles, supra*, B058344.)  However, the gun jammed, and Magana came from behind the counter, pushed Ricardo Valles (Valles), and said, "Let's get out of here now."  Valles resisted, responding "[g]et out of here" and "[g]et away."  Valles then unjammed the gun and fired it into the temple of  Jimenez's head.  Jimenez died a few days later.

B.     *The Information, Plea, and Sentencing*

The amended information charged Valles, Mendez, Alberto Valles, Ortega, Caudillo, and Magana with first degree murder (§ 187, subd. (a); count 1); conspiracy to commit murder (§§ 182, former subd. (1), 187, subd. (a); count 2); and conspiracy to commit assault with a deadly weapon (§§ 182, former subd. (1), 245, subd. (a)(1); count 3).  The information alleged 11 overt acts as to each of the conspiracy charges.  The information specially alleged Valles personally used a firearm (§ 12022.5) and, as to Mendez and the codefendants, a principal was armed with a firearm during the commission of the offense (§ 12022, subd. (a)(1)).  The information also alleged the offenses were committed

---

said only two men were kicking and beating Jimenez and the prosecutor's argument that the two men were Alberto Valles and Caudillo.

4

in association with a criminal street gang within the meaning of Penal Code section 186.22, subdivision (b)(2).  (*Valles, supra*, B058344.)

The trial commenced as to all defendants on October 2, 1990.  On the fourth day of trial (October 5), Mendez and the other defendants except for Valles entered into negotiated pleas of guilty or no contest.  Mendez pleaded no contest to second degree murder and admitted the allegation a principal was armed with a firearm.  As part of the plea, Mendez and his attorney each stipulated that the probation report and the preliminary hearing transcript provided a factual basis for the plea.  The trial court found Mendez made a knowing, voluntary, and intelligent waiver of his constitutional rights, and based on the first three days of testimony, there was a factual basis for the plea.  Before sentencing Mendez, the trial court read into the record a letter Mendez admitted writing to "Ralph" stating, "As you probably know by now, that I got 15 to life but I don't sweat it as long as I know I am alive and that Vato is dead."

The trial court sentenced Mendez pursuant to the negotiated plea to 15 years to life for second degree murder and imposed and stayed a one-year term for the firearm

enhancement.[4]  The court dismissed the remaining allegations. Mendez did not attend the remainder of the trial.[5]

C.     *Mendez's Petition for Resentencing*

On February 7, 2019 Mendez, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his murder conviction and to be resentenced in accordance with recent statutory changes relating to accomplice liability for murder.  In his petition, Mendez declared he "pled guilty or no contest to 1st or 2d degree murder in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2d degree murder at trial pursuant to the felony murder rule or the natural

---

[4]     The abstract of judgment reflects that the one-year term on the firearm enhancement was imposed.  However, at sentencing the trial court stayed the firearm enhancement as part of the negotiated plea.  On remand, if Mendez's conviction is not vacated, the superior court should modify the abstract of judgment to correctly reflect the sentence imposed.

[5]     The jury found Valles guilty of first degree murder and conspiracy to commit murder, but not guilty of conspiracy to commit assault with a deadly weapon.  The jury found true the firearm-use and gang allegations.  (*Valles, supra*, B058344.)  On appeal, we affirmed Valles's judgment of conviction, but we concluded as to Mendez the trial court had violated his plea agreement because it discussed with Mendez at the time of his plea that his parole term would be limited to five years although the Board of Prison Terms had authority to place Mendez on parole for up to life.  (*Ibid*.)  We reversed the judgment as to Mendez and remanded to allow him the option to withdraw his plea and have the charges reinstated.  (*Ibid*.)  On remand Mendez elected not to withdraw his plea, and the judgment was reinstated.

6

and probable consequences doctrine"; and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Mendez requested the court appoint counsel for him. Mendez argued in his supporting memorandum that he pleaded to second degree murder based on the natural and probable consequences doctrine, he had no intent to kill, he was not a major participant, and he did not act with reckless indifference to human life. Mendez also submitted a declaration in which he stated "[t]hat during the offense [he] was unaware that the actual killer had a firearm." Further, Mendez asserts the videotape shows that Valles told his confederates during the incident, "Get out of here."

On May 22, 2019 the People filed a 25-page response to Mendez's petition in which they argued Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was unconstitutional, and in any event, Mendez was ineligible for relief under section 1170.95 because the testimony showed Mendez and Magana beat Jimenez in the liquor store and threw cans and packages of beer at him, leading to Valles shooting Jimenez. Further, Mendez had a motive to harm Jimenez as a rival gang member. Thus, they argued, Mendez was a direct aider and abettor of the murder with the intent to kill. The People attached over 1,000 pages of exhibits to their petition, including significant portions of the preliminary hearing and trial transcripts, as well as the transcripts of Mendez's 2002 and 2015 parole hearings. In their response the People pointed to Mendez's statement at his 2015 parole hearing: "I realize that I was just as culpable because I was actively involved in the crime and I set in motion the events that caused Jessie Jimenez's death." The People also quoted the letter the trial court read at sentencing in which Mendez wrote to

7

a friend he was comfortable with his sentence as long as he knew "Vato" was dead.

Mendez, representing himself, submitted a reply to the People's response (marked received by the court), arguing he had a right to counsel and an evidentiary hearing. He asserted that before the shooting Magana pushed Valles and said, "Let's get out of here now," and in response Valles told his confederates to "[g]et out of here." Mendez also argued based on the trial transcript that before Valles shot Jimenez, the two people who had been fighting Jimenez (arguably including Mendez) had already left. The cited transcript reads:

"Q: When the person shot the pistol, the two people that were fighting with this man, had they already left?

"A: Yes."

Mendez argued the target offense was an assault and Mendez did not have the intent to kill. Mendez also objected to the court considering the letter from Mendez and the parole hearing transcripts.

On May 24, 2019 the superior court summarily denied Mendez's petition for resentencing.[6] The court stated it had considered Mendez's petition and the People's response, but it was "unnecessary for Petitioner to file a Reply because the record is clear that he does not qualify for resentencing." The court did not appoint counsel for Mendez. In denying Mendez's petition, the court explained, citing to the People's response, "Petitioner was convicted of second degree murder based upon his plea of no contest in 1990 during the middle of his criminal trial. He was

---

[6]     Judge Steven D. Blades ruled on the petition. Judge Gregory C. O'Brien presided over the trial but retired in 2005.

sentenced to 15 years to life in state prison.  Co-defendant Valles was convicted by a jury of first degree murder and conspiracy to commit murder.  The underlying facts make it clear that the murder was intentional and the motive was for the benefit of his gang and to obtain vengeance against rival gang members. . . . Petitioner admitted that he 'was just as culpable because I was actively involved in the crime and I set in motion the events that caused [the victim's] death.'. . .  Petitioner was not convicted under the theories of [f]elony [m]urder or [n]atural and [p]robable [c]onsequences."  On July 15, 2019 Mendez submitted a reply brief, which the court marked received.  On August 12, 2019 the superior court issued an order nunc pro tunc indicating it had reviewed Mendez's reply brief.  The court did not otherwise modify its ruling.

Mendez timely appealed.

## DISCUSSION

A.    *Senate Bill 1437*

On September 30, 2018 Senate Bill 1437 was signed into law, effective January 1, 2019.  Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 1; see *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

9

To accomplish this purpose, the Legislature added section 188, subdivision (a)(3), and section 189, subdivision (e). (*Gentile*, *supra*, 10 Cal.5th at pp. 842-843.) New section 188, subdivision (a)(3), effectively "eliminates natural and probable consequences liability for murder regardless of degree." (*Gentile*, at pp. 847-848.) New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." New section 189, subdivision (e), in turn, limits the exception to the malice requirement under the felony-murder rule to circumstances where the People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[7]

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted

---

[7] New section 189, subdivision (e), provides, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

of murder under Senate Bill 1437's changes to sections 188 and 189.  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4; see *Gentile*, *supra*, 10 Cal.5th at p. 847.)  "If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo, supra*, 44 Cal.App.5th at p. 327, review granted; accord, *People v. Perez* (2020) 54 Cal.App.5th 896, 903 (*Perez*), review granted Dec. 9, 2020, S265254; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165 (*Nguyen*); *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900-901 (*Tarkington*), review granted Aug. 12, 2020, S263219; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)

"In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), '[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is

11

eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner."  [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .'" (*Perez, supra*, 54 Cal.App.5th at pp. 903-904, review granted [trial court properly considered preliminary hearing transcript in determining defendant pleaded no contest to second degree murder based on a theory he was the actual killer], quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*) [superior court erred in denying petition without evidentiary hearing where preliminary hearing transcript showed petitioner was not the actual shooter and there was no finding he was a major participant in the underlying robbery or acted with reckless indifference to human life]; accord, *Nguyen, supra*, 53 Cal.App.5th at p. 1166 [preliminary and plea hearing transcripts demonstrated petitioner pleaded guilty as a direct aider and abettor of second degree murder where he stipulated the factual basis for his guilty plea was the preliminary hearing and there was no testimony at the preliminary hearing about an underlying felony or mention of felony murder or the natural and probable consequences doctrine].)

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the

12

petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Tarkington, supra*, 49 Cal.App.5th at pp. 898-899, review granted; *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)[8]  The prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

B.      *The Superior Court Erred in Finding Mendez Is Ineligible for Relief as a Matter of Law*

Mendez contends the superior court should have accepted as true his averments that he did not share Valles's intent to kill and instead was convicted under the natural and probable consequences doctrine.  The People argue Mendez's record of conviction shows Mendez was prosecuted for murder based on a theory of actual malice, noting Mendez was charged in the information with commission of first degree murder "with malice aforethought" and conspiracy to commit murder.  Further, the People argue the preliminary hearing transcript shows the People's theory was that Jimenez was targeted in retaliation for

_____

8       The Supreme Court in *People v. Lewis* limited briefing and argument to the following issues:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]"  (Supreme Ct. Minutes, Mar. 18, 2020, p. 364; *People v. Lewis, supra*, 43 Cal.App.5th 1128, review granted.)

13

actions taken by Jimenez's family who were rival gang members. We agree with Mendez the superior court erred in failing to appoint counsel for him and failing to issue an order to show cause.

Mendez made a prima facie showing he was entitled to relief under section 1170.95. He stated in his declaration he pleaded no contest to second degree murder because he believed he could have been convicted of murder at trial under the natural and probable consequences doctrine; he could not now be convicted of second degree murder because of changes made to the law; and he was "unaware that the actual killer had a firearm" (thus negating any intent to kill). The superior court was required to "accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*Drayton, supra*, 47 Cal.App.5th at p. 968.) The record of conviction does not conclusively show as a matter of law Mendez harbored an intent to kill. Contrary to the People's argument, the fact Mendez was initially charged with first degree murder committed with malice aforethought does not mean his conviction of second degree murder was based on malice aforethought, and the charge he conspired to commit murder was dismissed. Further, unlike *Perez, supra*, 54 Cal.App.5th at pages 906 to 907, review granted, in which the defendant was not charged with an underlying crime that could have supported a conviction under a felony murder or natural and probable consequences theory, Mendez was charged with conspiracy to commit assault with a deadly weapon. The People's argument this charge "was likely presented as a lesser included offense of conspiracy to commit murder" is pure speculation.

14

Moreover, the testimony at trial was consistent with a theory Mendez intended to assault Jimenez (not kill him) to retaliate against Jimenez's family's members, who were in a rival gang. Mendez threw beer cans at Jimenez and possibly kicked and beat him (which is disputed) as Jimenez hid behind the counter, but there was no evidence Mendez had a gun or in any way urged Valles to shoot Jimenez. Further, Mendez's fellow gang member Magana pushed Valles after Valles's gun jammed, and Magana urged Valles to leave, saying, "Let's get out of here now." And, as Mendez stated in his declaration, he did not know before the shooting that Valles brought a gun. There is no evidence to the contrary. Indeed, Valles and Mendez were from different gangs and arrived in separate cars.[9]

The Court of Appeal's decision in *Drayton, supra*, 47 Cal.App.5th 965 is directly on point. There, four men, including petitioner John Drayton, entered a house to commit a robbery while three family members were asleep. During the robbery, Drayton held down the wife and hit her in the head with his gun; a confederate shot and killed her husband. (*Id.* at

---

[9] The People also rely on Mendez's statement in a letter to "Ralph" that the trial court considered at sentencing, which stated Mendez did not "sweat" his sentence as long as he knew he was "alive and that Vato is dead." But this statement was hearsay considered only by the trial court in the context of sentencing. Further, any statement that Mendez was happy Jimenez was dead did not mean on the day of the shooting Mendez had the intent to kill him. The People's reliance on statements made by Mendez during his 2015 parole hearing is similarly misplaced. Those statements are not part of Mendez's record of conviction, and the court erred in considering them as part of its prima facie review.

pp. 968-969.) Drayton later entered a negotiated plea to felony murder. (*Id*. at p. 969.) In his petition for resentencing, Drayton declared he was eligible for resentencing because he was not a major participant in the felony and did not act with reckless indifference to human life. (*Id*. at p. 970.) The superior court denied the petition on the ground the preliminary hearing testimony showed Drayton was a major participant in the burglary and robbery and acted with reckless indifference to human life. (*Id*. at p. 982.) The Court of Appeal reversed, concluding the superior court erred by not accepting Drayton's asserted facts as true and instead weighing the evidence before issuing an order to show cause. (*Ibid*.) The trial court here similarly erred in rejecting Mendez's statements in his declaration and instead concluding based on its own review of the facts at trial that "the murder was intentional" and Mendez was not convicted under the natural and probable consequences doctrine.

Therefore, Mendez made a prima facie showing he fell within the provisions of section 1170.95, and the superior court was required to appoint counsel for him.[10] (*Perez, supra*, 54 Cal.App.5th at p. 903, review granted; *Verdugo, supra*, 44 Cal.App.5th at p. 327, review granted.) Further, Mendez made a prima facie showing he was entitled to relief based on the same averments that show he did not intend to kill Jimenez. Accordingly, the court should have issued an order to show cause.

---

[10] The superior court also should have also allowed Mendez—assisted by counsel—to file a reply brief. Because we conclude the superior court must issue an order to show cause, Mendez's attorney will have another opportunity for briefing.

(*Perez*, at p. 903, review granted; *Verdugo*, at p. 327, review granted.)

## DISPOSITION

The order denying Mendez's petition for resentencing under section 1170.95 is reversed.  We remand for the superior court (1) to appoint counsel for Mendez, (2) to issue an order to show cause, and (3) to hold a hearing to determine whether to vacate Mendez's conviction.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.